People v McCullough (2024 NY Slip Op 50733(U))

[*1]

People v McCullough

2024 NY Slip Op 50733(U)

Decided on June 14, 2024

Supreme Court, New York County

Beller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 14, 2024
Supreme Court, New York County

The People of the State of New York

against
Derrick McCullough, Defendant.

Indictment No. IND-70786-23

ADA Christopher Taillefer, New York County District Attorney's Office, for the People
Danielle Von Lehman, Esq., for the Defendant

Beth Beller, J.

On February 23, 2024, defendant filed a motion to dismiss the instant case pursuant to Criminal Procedure Law ("CPL") §30.30, challenging the People's Certificate of Compliance ("COC") and thereby their Certificate of Readiness ("COR"). Defendant submitted an amended motion on February 26, 2024. On March 19, 2024, the People filed their response. Upon reviewing the People's papers, the Court requested additional information and the People provided that information on April 5, 2024. On April 17, 2024, the defense filed a reply. As described infra, the Court finds the People's COC and COR valid and that 104 chargeable days have elapsed and, therefore, defendant's motion to dismiss is denied.
BACKGROUND
Defendant stands charged with Criminal Sale of a Controlled Substance in the Third Degree, in violation of Penal Law ("PL") § 220.39(1), and related charges. Defendant was arrested on December 2, 2022, and arraigned on December 3, 2022. The charges relate to an incident in which, according to the Criminal Court complaint, defendant allegedly sold three glassines of heroin to an undercover police officer on December 2, 2022. Defendant was indicted by a New York County Grand Jury and, on March 15, 2023, he was arraigned in Supreme Court. As of defendant's arraignment, the parties agree that 103 chargeable days had passed.
On September 20, 2023, the People filed and served a COC (which contained a disclosure list). The information disclosed with this initial COC included, among other items, the arrest paperwork for defendant and another individual, the invoices for recovered property and the respective chains of custody, the undercover buy report, the detective's ECMS documents (also known as DD5s), photographs, Giglio material for the testifying officers, grand jury minutes, memobooks, and NYPD laboratory paperwork. The People then filed and served a COR on October 31, 2023. On November 2, 2023, the People filed a Supplemental COC ("SCOC") with Giglio information related to one of the police officers on the case, as well as "Certificates of Analysis" for two invoices. The People filed a second SCOC on February 8, 2024, to reflect the disclosure of the undercover video that is the subject of this motion. In his [*2]affirmation, the assigned prosecutor avers that he learned that video recordings might exist in this case when consulting with a colleague regarding their own recent discovery of similar video in their case. Each SCOC was accompanied by a restatement of the People's original statement of readiness.
On February 23, 2024, the defense filed the instant motion, which was amended on February 26, 2024, the next court appearance. The court set the instant motion schedule and the parties submitted their papers in accordance with that motion schedule.

LEGAL ANALYSIS
Certificate of Compliance
Defendant contends that the People had not fulfilled their discovery obligations prior to filing their COC and COR, rendering both documents invalid. Defendant therefore concludes that the speedy trial time for the People to answer ready in the case has expired and moves this court to dismiss his case pursuant to Criminal Procedure Law ("CPL") § 30.30. The People, in turn, contend that only 103 days have expired in this case, and urge the court to find their COC and COR valid.
The CPL provides that the People shall disclose to the defense "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." See CPL § 245.20(1). CPL § 245.20(1) prescribes a detailed, non-exclusive, list of discovery materials that the People are obligated to disclose to defendant soon after the commencement of the action. In amassing and providing these materials, the law provides that the People "shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control; provided that the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain." CPL § 245.20(2). Should the People later discover additional discoverable "material or information" subject to disclosure, they are obligated to "expeditiously notify the other party" and disclose that material. CPL § 245.60. Once the automatic discovery items are provided, service of a valid COC is a condition precedent to the People's declaration of trial readiness and serves to toll the statutory speedy trial time. See CPL § 30.30(5). If the People belatedly disclose material subject to CPL § 245 disclosure, "the court shall impose a remedy or sanction that is appropriate and proportionate to the prejudice suffered by the party entitled to disclosure." CPL § 245.80 (emphasis added).
The Court of Appeals has recently analyzed the statutory structure of CPL § 245 and discussed the standard of due diligence. The Court stated that "[a]lthough the statute nowhere defines due diligence, it is a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives." People v. Bay, 41 NY3d 200, 211 (2023). The Court reasoned that any "analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented." Id. at 212. The decision clarifies, however, that while "there is no rule of 'strict liability;' that is, the statute does not require or anticipate a 'perfect prosecutor,'" good faith alone is insufficient where the court finds a lack of diligence. Id. The Court lays out multiple factors that a court should consider when assessing whether a prosecutor has acted with due diligence, including (1) the efforts that the prosecutor made to comply with CPL §245; (2) the volume of discovery "provided and outstanding" in the case at [*3]the time of the challenge; (3) whether the missing material would have been obvious to a diligent prosecutor; (4) the "complexity of the case;" (5) the prosecutor's "explanation for any discovery lapse;" and (5) how the People responded when they were informed that discovery was missing. Id. With respect to the issue of prejudice, the Court of Appeals made clear that "a defendant need not demonstrate prejudice to obtain speedy trial dismissal based on a failure to timely comply with discovery obligations." Id. at 213.
Defendant contends that items of discovery, disclosed after the initial COC and COR were filed, render those documents illusory. The People disagree and urge this Court to find their COC and COR valid, and that any belated disclosures made were not due to a lack of reasonable diligence.
1. Undercover Video Footage
Defendant contends that the People failed to provide video footage recorded on the undercover officer's covert camera before they certified compliance. This footage, both parties agree, consists of surveillance of the transaction at the heart of the case. The People agree that they did not provide this surveillance before they filed their first COC and COR, however, they argue that they made extensive efforts to retrieve any video surveillance of the event and, therefore, the belated disclosure of this surveillance does not stem from a lack of diligence.
Indisputably, this surveillance is discoverable under CPL § 245.20(1)(g); which provides that the People must disclose "[a]ll tapes or other electronic recordings . . . and a designation by the prosecutor as to which of the recordings under this paragraph the prosecution intends to introduce at trial or a pre-trial hearing." Surveillance covertly taken and retained by the NYPD in the course of an undercover buy operation falls squarely within this category of materials.
Important to the issue of diligence is the definition of covert tracker video surveillance. The People describe, in their affirmation, exactly what this category of surveillance is:
A covert tracker is a streaming device that looks like an everyday object and is carried by an undercover detective during buy operations for safety purposes. The device streams audio and video to an iPad held by a commanding officer in the field during an operation. As opposed to recording devices, which are carried by an undercover detective to record and retain evidence of potential drug sales, the purpose of the covert tracker is for the field team to consistently follow an undercover detective's movements while in the field so the team can intervene if necessary.
People's Response at n.4.
It is clear from the People's affirmation and the supplemental exhibits submitted to the court that the assigned prosecutor made multiple, diligent attempts to ascertain the existence of any type of video surveillance footage. Specifically, in December 2022, the assigned prosecutor asked the arresting detective whether there was any undercover video taken; she responded that there was not. A review of the "UC Buy Report," submitted as a supplemental exhibit, bears out that the undercover's paperwork did not mention video recordings of any kind. The prosecutor then asked the undercover officer whether they had recorded any undercover video; they responded that they had not. Next, they asked the arresting detective to attempt to retrieve surveillance from businesses near the incident location, to determine whether additional surveillance existed. As the prosecutor contemporaneously noted in an internal document, called a "SNP 161," no video was recovered. Several months later, in February 2023, the prosecutor again asked the arresting detective and the undercover officer, along with a third officer, whether undercover video had been recorded and was again told it did not exist. At that point, the [*4]assigned prosecutor stopped making inquiries. This makes sense; after asking the relevant officers and reviewing the relevant paperwork, a reasonably diligent prosecutor would not continue to search for an item of discovery that he or she had no reason to believe existed. Contrary to defendant's arguments, these efforts to obtain video surveillance of any kind demonstrate the People's efforts to comply with CPL §245 before they filed their first COC and COR.
While the parties now know that covert video was, in fact, retained by the Technical Assistance Response Unit ("TARU") within the NYPD, neither the arresting detective nor the undercover officer (who would have been the individual to record the video in the first place) knew that video had been retained. With an understanding of the purpose of the covert tracker, the Court finds that the existence of recorded surveillance would not be reasonably foreseeable to the prosecution if the persons in the best place to know of its existence were unaware of it. This Court finds persuasive that the prosecution, upon realizing through discussions with a colleague that this surveillance might exist, promptly investigated, retrieved, and provided the material. These efforts are exactly the actions that this Court would expect of a diligent prosecutor.
Furthermore, at the time the People filed their COC on September 20, 2023, they had provided the vast majority of the discovery in this case. A review of the People's discovery list reveals that the People disclosed information that the Court would expect a reasonably diligent prosecutor to obtain and provide to the defense in this type of case; including, but not limited to, arrest reports, omniform complaints, undercover buy reports, memobooks, vouchers, body worn camera footage, laboratory reports and analysis, photographs, and Giglio material. This is not a scenario where, as in Bay, the prosecutor represented in court on multiple occasions that routinely-generated documents, such as arrest reports, domestic violence incident reports, and 911 calls, did not exist, when, in fact, they did. See Bay, 41 NY3d at 215. Instead, the assigned prosecutor in the case at bar retrieved voluminous records, including both routinely-generated and case-specific documents to provide to the defense before filing their first COR. In addition to underscoring the People's attempts to comply with CPL §245, the volume of discovery provided in this case prior to the initial COC demonstrates the diligence of the assigned prosecutor in this case.
When considering the prosecution's actions as a whole, this Court finds that the People made reasonable and diligent efforts to comply with their statutory obligations under CPL §245, and the belated disclosure of the covert surveillance does not invalidate the People's COC, SCOCs, or COR. The Court of Appeal's opinion in Bay does not require a different result. By specifically stating that CPL §245 does not require a strict liability standard, and further acknowledging that "belated disclosure will not necessarily establish a lack of due diligence or render an initial COC improper," the Court of Appeals clearly contemplated situations where a belated disclosure could be made by a prosecutor exercising reasonable diligence. Bay, 41 NY3d at 212. Such is the case here. Accordingly, the Court finds the People's COCs, SCOCs, and CORs filed in this case valid.
2. William Torres Arrest Paperwork and Discovery
Defendant's next challenge to the People's COC is that the People failed to provided discovery related to an uncharged individual, William Torres, who was originally arrested with defendant. The People respond, however, that they in fact provided all the material related to Mr. Torres' arrest well in advance of the filing of their initial COC. A review of the People's COC [*5]bears this response out: the second item on the People's discovery list that was filed with their initial COC is "Arrest Paperwork Torres." In his motion, defendant makes no specific claims as to missing paperwork, claiming only that he was made aware of Mr. Torres' arrest in February 2024 and that the paperwork related to that arrest was never disclosed. The People's submission clearly belies that claim and therefore, the Court finds that this issue is moot.
3. Giglio 
Material for Non-Testifying Police Witnesses
Defendant also argues that the prosecution has only provided Giglio material for the officers that they intend to call as witnesses at trial. He argues that he should be entitled to material for all of the police officers involved in the case.
CPL § 245.20(1)(k)(iv) provides that the prosecution must disclose "[a]ll evidence and information . . . that tends to . . .impeach the credibility of a testifying prosecution witness." (emphasis added). While courts of concurrent jurisdiction have differed on how to interpret this section of CPL § 245.20(1)(k), when viewed as a subsect of the entirety, this Court must consider the basic tenants of statutory interpretation in order to determine and give effect to the Legislature's intent. See Patrolmen's Benev. Ass'n of City of New York v. City of New York, 41 NY2d 205, 208 (1976). When the language of the statute is "clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used." Id.; People v. Quinones, 79 Misc 3d 1244(A) at *4 (Crim Ct Bx Cnty 2023) (Pacheco, J.); People v. Edwards, 77 Misc 3d 740 (Crim Ct Bx Cnty 2022) (Zimmerman, J.) (noting that the Legislature could have easily extended the People's Giglio obligation to all witnesses but decided not to). When reading the plain language of CPL §245.20(1)(k)(iv), therefore, it is clear that the Legislature intentionally limited the People's automatic disclosure obligations for impeachment material to testifying witnesses. See Quinones, 79 Misc 3d at *5. Therefore, this Court finds that the People are not obligated to provide CPL §245.20(1)(k)(iv) materials for non-testifying officers. Accordingly, the People's COC remains valid under this prong of defendant's motion.
4. Laboratory Materials
Defendant's final challenge to the People's COC and COR relate to laboratory materials and testing. Defendant claims that the People "have also not disclosed materials regarding the labs and scientific tests in this case as required." Defense Motion at ¶28. The People respond that they have already provided all the materials to which the defense is entitled, and any discrepancies in that material are fodder for cross-examination, not indicators of missing discovery.
CPL §245.20(1)(j) requires the prosecution to disclose "[a]ll reports, documents, records, data . . . including but not limited to preliminary tests and screening results and bench notes and analyses performed . . ., concerning . . .scientific tests or experiments or comparisons." The section specifically enumerates additional items included in the discoverable information: "laboratory information management system records relating to such materials, any preliminary or final findings of non-conformance with accreditation, industry or governmental standards or laboratory protocols, and any conflicting analyses or results by laboratory personnel regardless of the laboratory's final analysis or results." Id. The defense argues that this language should be read to include "the calibration and other lab information as required under CPL 245.20(j)." Defense Motion at ¶28. The Court disagrees with the defense's interpretation of this section.
As stated supra, when interpreting a statute, the Court must abide by the basic tenants of statutory interpretation and abide by the plain language of the statute "when the statutory language is clear and unambiguous." See Patrolmen's Benev. Ass'n of City of New York, 41 [*6]NY2d at 208. Nowhere in CPL §245.20(1)(j) does the Legislature require the prosecution to provide calibration materials or records for the machines used in laboratory testing. The omission is significant in light of the Legislature's specific inclusion of calibration records in its discovery mandate under CPL §245.20(1)(s) for violations of the Vehicle and Traffic Law. Clearly, if the legislature intended for the People to obtain and provide calibration materials under §245.20(1)(j), it would have specifically stated that. Accordingly, this Court finds that the People are not required to provide such materials for records provided under §245.20(1)(j).
A review of the People's disclosure lists demonstrates that they had indeed provided the vast majority of the required laboratory materials to the defense in advance of the filing of their first COC and COR. To the extent that any materials were provided after the filing of the first COR, they appear to be de minimus or duplicative, and therefore do not invalidate the People's statement of readiness.
5. Conclusion
In sum, the Court finds that the COC and COR in this case were filed in good faith and reasonable under the circumstances. Accordingly, the Court concludes that the COC and COR, along with the SCOCs and restatements of readiness filed in this case, were valid and defendant's motion challenging those documents is denied.
CPL §30.30
Where defendant stands charged with a felony, CPL §30.30(1)(a) requires dismissal of an indictment where the People are not ready within six months (in this case, 182 days) of the commencement of the action. A defendant making a motion pursuant to CPL § 30.30(1)(a) bears the initial burden of demonstrating, by sworn allegations, that there has been an unexcused delay greater than six months. People v. Santos, 68 NY2d 859, 861 (1986). Once shown, the burden shifts to the People to prove that the time is excludable. Id. 
December 3, 2022, to March 15, 2023
Both parties agree that this period, between defendant's arrest and arraignment in Criminal Court on December 3, 2022, and his arraignment upon the instant indictment in New York County, Supreme Court, Criminal Term Part 22 on March 15, 2023, is chargeable to the People. This Court agrees. Accordingly, the People are charged 103 days. 103 days charged (103 total).
March 15, 2023, to June 7, 2023
On March 15, 2023, the Court adjourned the case for decision on defendant's omnibus motions. Accordingly, this period is excludable. See CPL §30.30(4)(a). 0 days charged (103 total).
June 7, 2023, to September 20, 2023
On June 7, 2023, the Court issued its decision on defendant's omnibus motions. Defendant filed a motion to dismiss the indictment pursuant to CPL §190.50. The court set a motion schedule and adjourned the case for its decision on September 20, 2023. This adjournment for defendant's pre-trial motions is excludable. See CPL §30.30(4)(a). 0 days charged (103 total).
September 20, 2023, to October 31, 2023
On September 19, 2023, the Court issued its decision denying defendant's motion to dismiss the indictment. The People filed and served a Certificate of Compliance, without a Certificate of Readiness, in court on September 20, 2023. The case was adjourned for hearings [*7]and trial. This adjournment is excludable as a reasonable adjournment for the People to prepare for trial after the Court's decision on defendant's motion. See People v. Banks, 207 N.Y.S.3d 898 (NY County Sup. Ct. 2024) (Beller, J.); People v. Aiken, 168 NYS 3d 679 at *3 (NY County Sup. Ct. 2022) (Kiesel, J); People v. Green, 455 N.Y.S.2d 368 (1st Dept 1982). 0 days charged (103 total).
October 31, 2023, to December 18, 2023
On October 31, 2023, assigned defense counsel was actually engaged on trial and sent an affirmation of engagement to the court. The case was adjourned to TAPB for November 14, 2023. On November 8, 2023, in advance of that court date, the Court reached out to the parties to indicate that the case needed to be put onto the TAPB calendar for a scheduled narcotics day. The Court then provided a list of dates, and assigned defense counsel selected the date that worked best for her and her client. Both sides agree, as does the court, that the period between October 31, 2023 and November 8, 2023 is not chargeable to the People, as defense counsel was actually engaged on the scheduled appearance date and requested the adjournment. CPL §30.30(4)(b).
Defendant argues, however, that the period between November 8, 2023 and December 18, 2023 should be charged to the People, as, in his view, the People had not yet filed a valid COR and pre-readiness administrative adjournments are generally chargeable to the People. However, as explained above, the Court finds that the People's COC of September 20, 2023, and their COR, filed on October 31, 2023, were in fact valid. Therefore, the Court finds that this post-readiness administrative adjournment is excludable. People v. Brown, 28 NY3d 392, 404 (2016); People v. Goss, 87 NY2d 792, 797 (1996). 0 days charged (103 total).
December 18, 2023, to February 23, 2024
On December 18, 2023, the People answered not ready for trial and the case was adjourned to February 13, 2024. On December 19, 2023, the People filed and served a restatement of readiness for trial. Accordingly, the People are charged one day between December 18, 2023, and December 19, 2023. 1 day charged (104 total).
On January 29, 2024, the Court emailed the parties to request that the case be rescheduled, as the part would not be operational on February 13, 2024. During the email correspondence that followed, the defense indicated that it intended to file the instant motion on the next date. The Court administratively adjourned the case to February 23, 2024, for the filing of the instant motion. This post-readiness period is excludable. People v. Brown, 28 NY3d 392, 404 (2016); People v. Goss, 87 NY2d 792, 797 (1996).
February 23, 2024, to February 26, 2024
On February 23, 2024, the attorneys appeared in court early in the morning, but defendant did not appear until later in the morning after his counsel had left. Defendant stated he could not appear after the lunch break, when defense counsel indicated she could return to the courtroom. The case was adjourned to February 26, 2024 for defendant to appear and to set the instant motion schedule. The adjournment is excludable. See CPL §30.30(4)(a). 0 days charged (104 total).
February 26, 2024, to April 17, 2024
On February 26, 2024, defendant filed the instant motion and a motion schedule was set. The case was adjourned to April 17, 2024. This adjournment is excludable. See CPL §30.30(4)(a). 0 days charged (104 total).
April 17, 2024, to May 10, 2024
Upon review of both parties' motion papers, the Court requested additional materials from the People in order to complete its decision. Defense counsel requested an opportunity to file a reply to the People's response. A new motion schedule was set. On April 17, 2024, the case was adjourned to May 10, 2024 for decision. This adjournment, for consideration of defendant's speedy trial motions, is excludable. See CPL §30.30(4)(a). 0 days charged (104 total).
May 10, 2024 to August 20, 2024
On May 10, 2024, the Court, having carefully considered the papers and supplemental materials submitted by both parties, orally denied defendant's motion to dismiss and indicated that it would issue its written decision in advance of the next calendar date. The case was adjourned to August 20, 2024 for hearings and trial. This adjournment is excludable. People v. Ali, 600 NYS2d 55, 57 (1st Dept 1993); People v. Douglas, 548 NYS2d 217, 218 (1st Dept 1989). 0 days charged (104 total).
As only 104 days have been found chargeable to the People in this case, defendant's motion for dismissal pursuant to CPL § 30.30 is denied.
Dated: June 14, 2024
New York, New York
Beth Beller, A.J.S.C.